ROBERT FUREY et al., Appellants, *v.* THE TOWN OF GRAVESEND
et al., Respondents.

By the act of 1883 (Chap. 458, Laws of 1883), in reference to "the
common lands of the town of Gravesend," the care, management and
control of said lands are vested in the supervisors of the town, and the
trustees chosen as specified therein, and it is provided, that they "shall
not have power to sell or give title to any lands of the town," with
certain exceptions.   As to the lands excepted they are authorized to
sell "to the present lessees in possession of the same," provided
the sale be confirmed by resolution at the annual town meeting.   In
an action by former lessees of one of the excepted lots, whose lease
had expired, to restrain a sale of the lot to a third person, *held,*
that the act operated as a mere license and authority to the board
so constituted to sell, in their discretion, to the lessees, but did not
obligate them to do so; that a lessee acquired no legal or equitable
interest in the land by virtue of its provisions until a contract of sale
had been perfected between him and the board, or unless he could
show a case entitling him to the exercise of such discretionary power.
At the annual town meeting in said town, in 1871, a resolution was
adopted, to the effect that the common lands of the town should there-
after be let on notice at public auction to the highest bidder, and if
any lot is let to any person other than the last lessee, the new lessee
shall pay the former one "the value of improvements on the property
at the expiration of the old lease," which condition shall be specified in
the notice of letting.   A lease of the land in question was duly executed
to plaintiffs, which expired February 1, 1883.   The only provision con-
tained therein as to payment for improvements was one substantially
as contained in the resolution.   The land was not relet.   *Held,* that no
liability was imposed upon the town by the resolution or the lease, to pay
for plaintiffs' improvements, or to lease the land again, and no absolute
liability in reference thereto, except that of specifying the new lessee's
liability in the notice to be given for leasing, in case it was determined
to lease again, which specification could not be construed as anything
more than a covenant that the town would take measures to cause
the new tenant to pay for the improvements; that, as there had been
no new lease, no breach had occurred; the town was entirely at liberty
to refuse to lease again, and to dispose of the lands otherwise according
to its discretion.
After the expiration of plaintiffs' lease the town brought an action of
ejectment against them, wherein judgment was rendered in favor of
the town.   *Held,* that said judgment was conclusive against any claim
on the part of plaintiffs to any right of possession in the land in ques-

tion antedating its rendition, either to compel satisfaction by the town of their claim for improvements or for any other purpose.

Accordingly *held*, that even if said statute created an absolute prohibition upon the board from selling and conveying the land, as plaintiffs had no interest, and were not residents of the town, they could not enforce such prohibition.

(Argued January 25, 1887; decided March 1, 1887.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made September 21, 1885, which reversed a judgment in favor of plaintiffs, entered upon a decision of the court on trial at special term, and vacated an injunction granted herein.

This action was brought to restrain defendants, the town of Gravesend and the trustees of the common lands of the town, from selling, or disposing of certain of said lands except to plaintiffs.

On the 4th day of April, 1871, a resolution was adopted by the electors of the town, at the annual town meeting then held, as follows: "*Resolved*, that the common land of the town of Gravesend on Coney Island, shall hereafter be let only at public auction, on the premises to be let, or at the town house in the town, to the highest bidder, in parcels not more than three hundred feet each (excepting Coney Island Point, which may be let in one parcel as at present), on notice specifying the time and place of letting, and describing the premises to be let, which said notice shall be published in the Brooklyn Daily Eagle and Union each, and in each week for four weeks immediately prior to each letting.

" No lot shall be let at a time more than one year prior to the expiration of any lease thereon, and not let for a longer period than ten years. If any lot be so let to any person other than the last lessee owning improvements on said lot, the new lessee shall pay the former lessee for the value of improvements on the property at the expiration of the old lease, (provided such improvements were on the property at the time of said public letting), at a rate to be fixed by arbitration between the old and new lessee, each choosing one arbitrator,

and which said arbitrators shall on disagreement choose a third, and the decision of such arbitrators, or a majority of whom, shall be final; and the above conditions shall be specified in the notice above provided for whenever there are improvements on the premises so to be let."

On the 12th day of April, 1878, it was resolved by the electors of the town, at a regular town meeting in the same manner, that the resolution of April 4, 1871, be amended by adding thereto the following: " The commissioners of common lands are also authorized to renew any existing lease or leases of common lands belonging to said town of Gravesend upon such terms as they may deem most advantageous for said town."

On the 20th day of December, 1872, the town of Gravesend, through its commissioners, executed and delivered to the plaintiff Robert Furey, a lease of the parcels of the common lands of the town known as lots numbers fifty-one, fifty-two, fifty-three, fifty-four, fifty-five, fifty-six and Coney Island Point, for a term of ten years commencing February 1, 1873, and ending February 1, 1883.

The lessee entered into possession under that lease and purchased the improvements then on the premises, and has since increased the betterments by a large outlay. The plaintiff Thomas F. White became a joint owner in the lease during the lifetime thereof. In July, 1883, after the expiration of the lease to Furey, an action of ejectment was commenced in favor of the town against these plaintiffs and others for the recovery of the premises. That action came to trial in February, 1884, and the plaintiff obtained a judgment for the immediate recovery of the possession of the premises. On the 22d day of May, 1883, an act was passed in relation to the common lands of said town (chap. 458, Laws 1883), the provisions whereof, so far as material, are stated in the opinion.

The plaintiffs brought this action in March, 1885, alleging that the trustees of the town have received a proposition for the purchase of the premises in question from William Zeigler, which they have considered and which they deem for the

interest of the town to acce, t, and that they have called a town meeting of the electors of the town to pass on the proposition, and they pray for an injunction restraining the trustees from proceeding with the notice, or the town meeting, or selling or conveying the lands.

Further facts are stated in the opinion.

*William C. De Witt* for appellants. The lands in suit were plainly withdrawn and exempted from the mode of sale established by section 3 of chapter 458 of the Laws of 1883, by the exceptive and special provisions contained therein, respecting such lands in their relation to the plaintiffs; and as the defendants were attempting the sale in the manner thus interdicted, they were properly enjoined at the suit of the parties in whose behalf the legislature had passed the prohibitory provisions. (*In re Methodist Church*, 66 N. Y. 395; Potter's Dwarris on Stat. 118; *In re N. Y. & B'klyn B'dge*, 72 N. Y. 5 !7; *In re Webb*, 24 How. Pr. 249; *Tonnele* v. *Hall*, 4 Comst· 140; *People* v. *Manhattan*, 84 N. Y. 565.) The plaintiffs have appropriate standing to maintain this action in a court of equity. (*A. & P. Tel. Co.* v. *B. & O. R. R. Co.*, 46 Sup. (J. & S.) 377; *Gravesend* v. *Curtis*, 34 How. Pr. 261; *Depau* v. *Moses*, 3 Johns. Ch. 349; *Graham* v. *James*, 7 Robt. 468; *Town* v. *Needham*, 3 Paige 545, 555; *Wendell* v. *Van Rensselaer*, 1 John. Ch. 344, 353; *Corkhill* v. *Landers*, 44 Barb. 228; *Brown* v. *Brown*, 30 N. Y. 541.)

*William J. Gaynor* for respondents. Plaintiffs have no standing in court to maintain this action. They have not shown that they are aggrieved or concerned in any way. (*Ins. Co.* v. *Stevens*, 101 N. Y. 411.) The judgment in ejectment between the town of Gravesend and the plaintiffs is conclusive of the question of the plaintiffs' ownership of any improvements on this land. (*Doak* v. *Wiswell*, 33 Me. 356; Wells on *Res Adjudicata* § 261.)

*Per Curiam.* We are of the opinion that the complaint in this action, shows no such interest in the lands which are the

subject of the dispute, as entitles the plaintiffs to the relief demanded, or the injunction awarded them by the trial court. The judgment rendered there, awarded to the plaintiffs a perpetual injunction, against the town from selling or conveying to one William Ziegler, certain lands owned by it.

No affirmative relief in respect to such lands was demanded in the complaint, or claimed on the trial, and the entire extent of the plaintiffs' claim, was an absolute and arbitrary right to prevent the defendant forever, from disposing of the lands in question except to the plaintiffs. There was no question made in the case but that the defendants are the owners in fee of the land in question, and entitled to its possession, nor claim made on the part of the plaintiffs, that they are entitled to its use, enjoyment or possession.

The only foundation for the action rests upon the claim that the plaintiffs have an equitable demand against some one, to be paid the value of certain erections formerly made by them upon the land in question, and which they omitted to remove therefrom, when the term of their tenancy expired. The pleadings seem to found this right, upon the provisions of chapter 458 of the Laws of 1883, which, so far as they affect this controversy, are substantially as follows : " The care, management and control of the common lands of Gravesend shall be vested in the supervisor of said town and five trustees," to be chosen as therein specified. It further provides " that such trustees shall not have power to sell or give title to any lands of the town of Gravesend, or to release or discharge any title or claim of said town thereto, excepting lot numbers 51, 52, 53, 54, 55, 56 and Coney Island Point, which premises are now in possession of lessees of said town."

The act then proceeds to prescribe the manner in which the lands of said town, other than those excepted, may be disposed of by said town, and as to the excepted lands further enacts as follows :   " But the said supervisor and trustees shall have power and are hereby authorized to sell said lots number fifty-one to fifty-six, inclusive, of said common lands and Coney Island Point, to the present lessees in possession of the

same, provided such sale shall be ratified and confirmed by resolution duly passed at an annual town meeting, or at a special town meeting to be called for the purpose, such sale to be upon the same terms of payment provided for sale of other lands of said town."

In giving a construction to this act, courts are confined to the language and terms employed by the legislature, and are not at liberty to interpolate phrases and provisions, although otherwise the purpose and intention, of the law making power may seem indefinite, obscure or incomplete.

If they have failed to insert such provisions in the law as will accomplish the result intended, their omission cannot be remedied by construction, and the law must, to that extent, be considered defective and inoperative.

In so far as any duty is enjoined upon, or power and authority conferred by the act upon the town commissioners, there does not seem to be any ambiguity in its provisions, but the particular object intended to be accomplished by the clauses quoted, is left quite obscure and uncertain. Such commissioners are prohibited from selling or conveying any of the common lands of the town except those in question, and did the provision stop here a strong implication would arise that they had power of their own volition to sell these lands to whomsoever they should elect, but the act then proceeds to prescribe the manner in which, and the persons to whom they are authorized to sell and convey.

No limitation of time is imposed upon the prohibition, or the exercise of the powers or duties, authorized and enjoined by the act, and, so far as its language is concerned, they would seem to be perpetual and irrevocable. Other provisions relate to the mode of disposing of other lands of Gravesend.

It is in the nature of things that the willingness of the contemplated grantees of these lands to purchase, is a condition precedent to the exercise of any power of sale by the supervisor and trustees, and in the absence of any offers by the lessees to buy, the whole provision must fall to the ground as inoperative and unenforceable.

In this event the lands would remain the property of the town, subject only to the same powers of disposition which apply to its lands generally.

The act operates as a mere license and authority, to the supervisor and trustees to sell and convey such lands according to the prescribed conditions, if they deem it best to do so, but it goes no further. Such board is placed under no obligation to make such sale, but is left entirely at liberty to exercise its discretion upon the subject.

It is quite certain that it could not sell them to the plaintiffs unless they choose to buy, and it is equally certain that the plaintiffs could not acquire either a legal or equitable interest in the lands, under this act until a contract of sale had been perfected between the parties, or the plaintiffs should show some case, entitling them to the exercise of the discretionary power of the commissioners in their favor. The complaint shows no such case. There is no allegation that the town officers have ever refused to sell or convey said lands to the plaintiffs, or that the plaintiffs have ever offered to purchase the same, or even that they have required said town to pay for the improvements made, or that said town has refused to do so, but the right of the plaintiffs seems to be founded upon the operation of the naked statute alone. The effect claimed for the act by the plaintiffs, if it could be upheld, would forever prevent the town from disposing of its land except to the plaintiffs, and would thus practically destroy its power of disposition and the usefulness and value of its property.

Whether any effect can be given to this statute, and if so, what operation it shall have, is a question which it is unnecessary here to discuss. It is enough now to say that the plaintiffs have not, by virtue of its provisions, acquired any interest in the lands in dispute.

A further claim is made by the plaintiffs, founded upon the circumstances under which they became tenants of the town for these lands for the term of ten years from February 1, 1873.

At the annual town meeting of said town in 1871, the electors thereof adopted a resolution in reference to the manner of leasing their town lands, which read substantially as follows :

*Resolved,* That the common lands of the town of Gravesend, on Coney Island, shall hereafter be let only at public auction on the premises, or at the town house in this town to the highest bidder " on notice specifying the time and place of letting, ' etc., and " if any lot be so let to any person other than the last lessee owning improvements on said lot, the new lessee shall pay the former lessee for the value of improvements on the property at the expiration of the old lease," at a rate to be fixed by arbitration, "and the above condition shall be specified in the notice above provided for whenever there are improvements on the premises so to be let."

The plaintiffs claim that this resolution, in connection with the lease subsequently taken by them from the town officers, constituted a covenant on the part of the town for the payment to them, at the expiration of their lease, of the value of the improvements put by them on such leased premises.

No provision for such payment is contained in the lease executed by the town to the plaintiffs ; and if any liability exists therefor, it must be such a one as may be implied from the terms of the resolution alone. No express provision relating to the subject is inserted therein except that when such lands are leased to one who was not formerly a lessee thereof, the new lessee shall pay the former one a compensation for existing improvements at a rate provided for. No absolute liability is assumed thereby by the town except the duty of specifying the new lessee's liability in the notice to be given for the leasing of the lands. This could not be construed as anything more than a covenant, that in the event of a further lease, the town would take measures to cause the new tenant to pay the former tenant for improvements.

There is no obligation imposed on the town to lease them again, and it is entirely at liberty, under such a covenant, to refuse to lease again and dispose of the lands otherwise according to its discretion Even if any covenant could be

implied, it is quite evident that the condition upon which it is made to depend, of a new lease to another party, has never occurred, and no breach of its obligations could have taken place.

A further difficulty in the way of any claim to an interest in the land, growing out of the resolution of 1871, arises out of the effect of a judgment in an action of ejectment for these lands, brought by the town against these plaintiffs in July 1883, and which resulted in favor of the town in February, 1884, over a year before this action was commenced. This judgment remains unappealed from, and unreversed, and is conclusive against any claim, on the part of the plaintiffs to any right of possession in the lands in question, antedating the rendition of such judgment.

If any right existed in the plaintiffs to retain possession of such lands, to compel the satisfaction by the town of their claim for improvements, or for any other purpose, they were bound to assert it in defense of the action of ejectment, and not having done so, have lost the right to make such a claim in this action.

We have been unable, from any point of view, to discover any right or interest which the plaintiffs have in the lands in question.

Granting, even, that the statute creates an absolute prohibition upon the supervisor and trustees, from selling and conveying these lands in the manner attempted by the town, it does not follow that the plaintiffs are entitled to invoke its enforcement. The right to enforce such prohibition by action can belong only to a party who has some right or interest in the property, which may be prejudiced by the action of the town.

Whoever may be aggrieved, it is quite clear that the plaintiffs were not residents of the town, and have no interest in the subject of the action which is to be affected thereby.

The order should, therefore, be affirmed.

All concur.

Order affirmed.