## John L. Diederich v. Louis W. Rose et al.

### Gen. No. 13,102.

1. LEASE—*when terms of, cannot be extended by implication or intendment.* Where the language of a lease, or a clause thereof, is plain, the same cannot be extended by implication or intendment.

2. LEASE—*when provisions applying to subsequent lessee do not apply to vendee.* The provisions of a lease providing that in the event of the lessee failing to obtain an extension thereof that the succeeding lessee shall be required by the lessor to pay for the improvements made by the original lessee, do not apply to a vendee purchasing the demised premises, unless made so by the terms of the lease.

3. CANAL COMMISSIONERS—*what ultra vires.* Between 1874 and 1899 the canal commissioners had no power to sell canal land in Chicago and therefore could not create a lien against premises demised to a tenant for the value of improvements which he might erect thereon, inasmuch as the creation of such a lien would carry with it the power to foreclose the same, and thus result in the doing by indirection of what could not be done by direction.

Bill in equity. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed April 18, 1907.

**Statement by the Court.** This is an appeal from a decree of the Superior Court of Cook county dismissing the bill of the appellant—complainant below—for want of equity.

The bill was filed January 22, 1906, against Louis W. Rose, Flora Rose, Edwin G. Foreman, trustee, Annie Brown, and certain other persons, tenants and note holders hereinafter alluded to. It set forth that for many years prior to April 20, 1904, the Board of Canal Commissioners of the State of Illinois held title to lot 7 in block 35 in Canal Trustees' new subdivision of blocks in the east fractional of the southeast fractional quarter of section 21, township 39 north, range 14, etc., situated in Chicago; that said board, prior to 1899, had no power to sell the same, but had power and authority, under the law of Illinois, to lease the same for a

period not exceeding twenty years; that for the purpose of securing income from said land, which was vacant and unoccupied, it made leases and instruments of writing from time to time, under which certain persons obtained the right to enter on possession of the same, and make improvements thereon; that the complainant, for about seventeen years prior to April 20, 1904, was in possession of said lot of land under and by virtue of writings from said board, and while so in possession had paid out about $15,900 for buildings, sewerage and plumbing, and about $300 for fixtures, counters, shelving, cars, mirrors, ice boxes, partitions, etc., necessary for carrying on business thereon; that prior to the making of the improvements by the complainant but a small amount of rent could be obtained from said premises; that prior to November 23, 1895, the rent received for said lot by said board was about $350 a year, but that in 1895, owing to the large amount of money expended by the complainant on said land and the largely increased income-producing power of said premises, the board decided to raise the rent of said lot to $600 per year, for a new lease; that on March 7, 1896, the Board of Canal Commissioners and the complainant Diederich entered into a written lease (set forth in the bill *in extenso*), by which the board leased the said land to Diederich for the term of ten years from November 23, 1895, at an annual rental of six hundred dollars, payable semi-annually in advance; that the lease contained this stipulation: "It is expressly understood and agreed that at the expiration of this lease if the party of the second part" (Diederich) "should be unsuccessful in obtaining a renewal of the same, that the party or parties to whom the Canal Commissioners may lease said premises shall be required to purchase and pay for the buildings or structures owned by said second party and situate on said lot, at an appraisal to be made by three judicious disinterested freeholders, one to be chosen by the Canal Commissioners or authorized agent, one by said party of the second part, and the third appraiser to be selected by the two thus chosen"; that the complainant received said lease, and continuing in posses-

sion of said land thereunder, made further extensive and valuable improvements thereon, including the building of a house; that the complainant signed the said lease and made the said improvements relying on the said agreement of said Board of Canal Commissioners that he should be the owner and get payment for the improvements; that in consequence of his said improvements, the premises became a large income-producing property, the gross rents received by complainant from the same having amounted to as much as several thousand dollars in one year, and when the bill was filed amounting to $2,500 a year; that complainant became the owner of all the improvements and has a right to payment for the same, and that his interest became in equity a charge and lien on said premises in favor of the complainant in the nature of a mortgage, good and valid in equity against all persons; that the complainant had obtained advances of money from time to time on the security of said property, and one Annie Brown had advanced money to redeem the premises for the complainant, and to secure herself had purchased a master's certificate of sale of said premises, and on March 22, 1904, had obtained a master's deed on the same, conveying to her all the interest of the complainant in the land, leasehold and improvements; that said deed to Annie Brown, however, was in equity only security for about $2,200; that on April 21, 1899, the General Assembly of Illinois passed an Act giving said Canal Commissioners authority to sell and convey certain lands, including the lot in question, and that on April 2, 1904, the board sold said lots, expressly subject to the lease to complainant, the grantee to have the rents reserved in and by said lease subsequent to May 23, 1904; that on April 20, 1904, by deed of that date, the board conveyed to Emma Harmeyer the said land, subject to the lease to the complainant; that the consideration named in the deed to Harmeyer is $11,100, and that but for the earning capacity of said land, almost entirely caused by the complainant's improvements, the land could not have been sold for nearly as much; that on June 8, 1904, said Emma Harmeyer received from Annie Brown,

who paid the same for the complainant, the sum of $300 as
rent for said premises for the period ending November 23,
1904; that prior to her purchase she well knew that the
complainant owned the improvements on said land and had
a right to payment for them, which was a charge upon said
premises, and knew the facts stated in the bill or might,
with reasonable diligence, have learned them; that on Octo-
ber 19, 1904, said Harmeyer conveyed to one Louis W.
Rose, by deed of that date, the said land; that on or about
November 23, 1904, said Rose claimed to the complainant
to be entitled to the rent reserved in the lease from said
board to the complainant, and received from Annie Brown,
who paid it for the complainant, the sum of $300 as rent
for said lot for six months from November 23, 1904; that
Rose, before he received the said deed, and before he made
any contract respecting said premises, knew that the com-
plainant owned the improvements on said land, and that the
same were charges on said land, and all the facts set up in
the bill, or knew enough of them to put him on inquiry, and
might, with reasonable diligence, have learned them; that
Rose formed and proceeded to carry out a scheme to oust
the complainant from possession of the premises and prevent
him from getting any rents from any tenants on said prem-
ises or any compensation for the improvements thereon;
that said Rose gave out that he had acquired all the right,
title and interest to said land and buildings, and that the
complainant and Annie Brown had no rights to the same
except a right to possession until November 23, 1905; that
on November 18, 1905, complainant and Annie Brown gave
notice to said Rose that complainant and said Brown de-
manded the full, fair value for the buildings on said land,
said value to be ascertained by an appraisal as provided in
said lease, and in said notice named an appraiser represent-
ing the complainant and said Brown, and called on said
Rose to select an appraiser to represent his interest, as pro-
vided in said lease, and to have an appraisal of said im-
provements; that complainant and Brown also on November
18, 1905, notified the Board of Canal Commissioners to the

same effect; that said board replied that the State of Illinois had conveyed all its interest in said property to Emma Harmeyer, subject to the terms of the lease to the complainant, and that neither the State nor Canal Commissioners had any interest or authority in the premises; that said Rose paid no attention to the notice, but November 25, 1905, succeeded in getting all the tenants who were on the premises to recognize him as their landlord and to refuse to recognize complainant or Annie Brown, and has since kept the sole and exclusive possession of said premises, including said improvements, and kept the complainant and Annie Brown excluded from said premises, and denies that they have any right of compensation or otherwise in relation to said premises.

The bill further alleged that certain persons made defendants were tenants in said premises, claiming to be tenants of Rose, and refusing to recognize any rights of the complainant or Annie Brown therein, and that Rose and wife on November 11, 1904, made a trust deed mortgage to one Edwin G. Foreman (also made a party defendant), to secure notes of $82,000 and accruing interest, conveying the premises in question. It makes the unknown owners of said notes parties defendant also, and claims that the right of complainant to payment for said improvements on the said premises is a charge on the whole of said premises prior to any right or claim of Foreman, or the holder of any of said notes.

It further alleges that Rose is wholly insolvent and of no financial ability, and that if Rose is permitted to go on taking the rents and profits of the premises, the complainant will suffer irreparable damage.

The prayer of the bill is that Rose may be decreed to hold the said premises and all buildings, structures and improvements thereon in trust for the benefit of the complainant, and subject to a charge for the full value of all said improvements; that the court may determine their value, and that the same may be held to be a lien in favor of the complainant on said premises superior to the claim of all

Diederich v. Rose.

other persons, and that Rose may be decreed to pay the amount of said charges, and in default thereof the premises sold to satisfy them, and that a receiver be appointed and an injunction against Rose be granted looking to the protection of said lien and charge.

To this bill Louis W. Rose, Flora Rose and Edwin G. Foreman filed general demurrers. On argument these demurrers were sustained by the chancellor in the Superior Court. The complainant then elected to stand by his bill of complaint as filed, and the chancellor dismissed the same for want of equity.

The appellant has assigned as error sustaining the demurrers and dismissing the bill. He has also alleged in his assignments, "that the court erred in holding that the Canal Commissioners had no power to secure complainant against his losing the outlays mentioned in the bill of complaint," and in holding that Rose, being insolvent, had the right to oust "complainant from the described premises, and to deprive said complainant of said outlays," and in holding that complainant was not entitled to any relief, "whether from the instruments of writing mentioned in the bill or from the conduct of Rose stated in the same."

COBURN & CASE and ALEXANDER S. BRADLEY, for appellant.

JESSE LOWENHAUPT, for appellees.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

The contentions of appellant in this cause are that the Board of Canal Commissioners had legally the power on March 7, 1896, to make the lease it then made to the appellant; that the provision in said lease that if the appellant should be unsuccessful in obtaining a renewal of the same, the party to whom the Commissioners might lease the same should be required to purchase and pay for the buildings and structures owned by said appellant and situated on

the land, at an appraised value, was made in view of and with reference to the fact that at that time the only legal method of assigning an interest in the land by the board was by lease; that the true intent of the stipulation which should be given effect in equity was that any assignee of the board, be he lessee or vendee, should pay for said improvements, and that after the Act of 1899, giving power to sell, equity should enlarge the literal import of the words used in the lease and to enforce their true meaning, declare a charge or lien on the property to secure appellant's expenditures made on the faith of said provision.

The appellees' controlling positions, on the other hand, are, first, that the Canal Commissioners had no power to enter into the agreement embodied in the clause relied on, especially if its proper construction, as the appellant contends, would create a lien or charge on the land; second, that the clause itself, conceding or assuming its validity, does not provide that a vendee, as distinguished from a lessee, shall be bound. Subsidiary propositions made by them are, that if the provision of the lease be legal and means what appellant claims, it is a personal covenant of the Commissioners, not one running with the land, and must be enforced, if at all, at law, and that appellant has not in any event shown a title to the improvements or that he has fulfilled his part of the agreement set out in the lease.

We need not discuss these latter propositions of the appellees, for we think the main points well taken.

Reversing their relative positions as given above in stating the contentions of appellees, we say, first, that the language of the clause in the lease is plain and cannot be extended by implication or intendment. Rufner v. McConnel, 14 Ill., 168; Traynor v. Palmer, 86 Ill., 477; Furey v. Town of Gravesend, 104 N. Y., 405.

Had the Commissioners intended to diminish, cut off, or limit in any manner their right of sale and conveyance of the property if they should be empowered to sell it, they should have so declared. As it was, they merely said that in case a lease was made, the lessee should pay for the im-

provements—not that a vendee should do so, or that they should themselves do so, or that a lien on the land should be created in favor of the original lessee.

Second, if the clause in question is not to be so construed, but is to be held by implication to have made a lien or charge on said land in favor of the lessee for the improvements which he put on it, then it is *ultra vires* and void. For if it established a lien, it involved a remedy to foreclose the lien. But between 1874 and 1899, the Board of Canal Commissioners under the law of the State had no power to sell canal land in Chicago. The intention of the Legislature in 1874 to take away the power of sale and even of leasing for long terms of canal lands in Chicago, was very marked. Before 1874 the Canal Commissioners had both the power of sale of these lands and of practically unlimited leases. Granger v. Board, 18 Ill., 443. From 1874 to 1891, the provision of the law only allowed leases of such lands for the maximum term of ten years. In 1891 the law was amended to make the maximum allowed term twenty years, and in 1899 a further amendment put the canal lands in Chicago within the same power of sale that the Commissioners had as to the other canal lands in the State.

But if the Canal Commissioners had involved or implied, in their power to lease for twenty years, a power to make and a power to foreclose a lien on the land, they had indirectly a power of sale and conveyance which the Legislature had not only negatively denied them, but had affirmatively, so to say, taken away from them. In the interpretation of statutes delegating authority to public officers, a strict rule of construction must be used. Lewis' Sutherland Statutory Construction, section 562. This doctrine has been especially applied in Illinois to the Canal Commissioners' delegated power. Board v. Calhoun, 1 Scammon, 521. For these reasons it is the opinion of the court, in which the writer concurs, that the order of Judge Gary in the Superior Court sustaining the demurrers and dismissing the bill should be affirmed. The writer, however, entertains a doubt, not shared by the other members of the court, as to the sound-

ness of the conclusion reached. That doubt is based on the following line of reasoning, very briefly expressed: The Canal Board found it necessary, in order to accomplish an effective and profitable leasing, to place in the lease the clause in question. The power to make that contract followed as an incident to the power to lease. It did not endanger the fee, because in various ways, if equity took jurisdiction to enforce the charge made by it, the value of the improvements could be secured from the future income of the land. If the contract as made was valid, it should be given a meaning according to its intention. That intention, it was apparent, was to encourage the lessee to improve by assuring him, as far as practicable, against loss in so doing. What should happen in case of sale was not expressly provided for, because no sale was then possible and no expectation of power to make one was entertained. The situation entirely changed after the Act of 1899. Equity, if we take a broad view of its powers in such matters (as, for example, the Supreme Court did in Gage v. Cameron, 212 Ill., 146), can prevent an injustice and tend to prove the truth of the somewhat doubtful maxim that in the law every wrong must find a remedy, by treating the sale "subject to the lease" as a perpetual lease subsequent to the appellant's, and providing that the vendee shall, from the income of the property temporarily sequestrated for that purpose, or in some other way, be compelled to pay for the improvements at an appraised value. Although it appears that Annie Brown, and not Diederich, is the holder of the legal title to the premises, the bill sufficiently states Diederich's equitable title to the property to prevent this consideration from rendering it demurrable.

But the writer admits that to sustain the bill on this reasoning would be to use the general and broad powers of equity in a manner for which there is no exact precedent, and thinks that if such an exercise of power is to be made, it ought to be either in the court of first resort, in which case it can be immediately reviewed, or in the court of last

resort, where its announcement will finally end the controversy.

The decree of the Superior Court is affirmed.

*Affirmed.*