In the Matter of " JOSEPH LEVINE ", an Infant.*

Domestic Relations Court of the City of New York, Children's Court, Bronx County, November 7, 1946.

*Samuel Duker* for petitioner.

*Helen L. Buttenwieser* for Jewish Child Care Association of New York, Inc. (Edenwald School for Boys), respondent.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act (L. 1933, ch. 482).

SICHER, J. On October 11, 1943, " Joseph Levine " (born June 5, 1934) was duly committed by this court to the care and custody of New York Association for Jewish Children, Inc. (now named Jewish Child Care Association of New York, Inc.), a duly authorized social agency which is supported by Federation of Jewish Philanthropies of New York City and which, among other functions, maintains a Cottage School at Pleasantville, New York, and in Bronx County a congregate plan small institution (Edenwald School for Boys) for mentally retarded children.

Such commitment was made in the exercise of the jurisdiction conferred on this court by the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482), which provides in respect of a child over seven and under sixteen years of age: " The court, if satisfied by competent evidence, may adjudicate the child to be delinquent * * *, and in such case shall render judgment as follows: * * * (c) Commit the child to the care and custody * * * of a duly authorized * * * agency * * *." (N. Y. City Dom. Rel. Ct. Act, § 83; see, also, N. Y. City Dom. Rel. Ct. Act, § 2, subd. [15].)

Adjudication had been made on June 4, 1943, upon the mother's petition alleging that " Joseph " was beyond parental control in that he remained upon the streets until late at night, was addicted to habits of masturbation in the presence of his mother and sister, and to pilfering and destructiveness in the home.

During the interval between the June 4, 1943, adjudication and the October 11, 1943, commitment, the court had first remanded the child to the Children's Ward of Bellevue Hospital for a physical and psychiatric study (pursuant to N. Y. City Dom. Rel. Ct. Act, § 85, subd. 1) to supplement earlier studies by the Bureau of Child Guidance of the Board of Education of the City of New York and of the New York State Psychiatric Institute and Hospital, and then had made an experimental three months' remand to Pleasantville Cottage School.

A commitment to " an authorized agency " by a Children's Court governed by the Children's Court Act of the State of New York (L. 1922, ch. 547, as amd.) is " subject to the further orders of the court " (Children's Court Act, § 22, subd. [c]).

However, the Children's Court Division of this court is governed not by said Children's Court Act but by said Domestic Relations Court Act of the City of New York. And although the latter statute provides also for a *remand* to " a duly authorized association, agency, society or institution, for a

certain designated period subject to the order, of the court '' (N. Y. City Dom. Rel. Ct. Act, § 83, subd. [d]), a *commitment* (under the above-quoted N. Y. City Dom. Rel. Ct. Act; § 83, subd. [c]) is for no fixed time; its duration and the further disposition of the committed child are exclusively, except as just below indicated, the right and responsibility of the particular agency, the court's jurisdiction automatically terminating on commitment save for certain expressly reserved controls, namely:

*A.* '' 1.   *   *   *   Any parent   *   *   *   of any child who has been or shall hereafter be committed by the children's court to the custody of an   *   *   *   agency   *   *   *   may at any time file with the court a petition verified by affidavit setting forth under what conditions such child is living, and that an application for the release of the child has been made to and denied by such   *   *   *   agency   *   *   *   or that such   *   *   *   agency   *   *   ♦   has failed to act upon such application within a reasonable time.   A copy of such petition shall at once be served upon such   *   *   *   agency   *   *   *, whose duty it shall be to file an answer to the same within five days.   If upon examination of the petition and answer the court is of the opinion that a hearing should be had, it may, upon reasonable and due notice to all concerned, proceed to hear the facts and determine the question at issue, and may discharge, return such child to the custody of its parents or guardian or direct such   *   *   *   agency   *   *   *   to make such other arrangements for the child's care and welfare as the facts of the case may require.   If the court orders the discharge of a child from an institution, upon an application duly made, the court may place the child on probation or under the supervision of the court. But no such petition affecting a juvenile delinquent shall be entertained by the court within sixty days after the date of his commitment.''   (N. Y. City Dom. Rel. Ct. Act, § 86, subd. 1.)

*B.* In a case where the institution or agency to which a child has been committed is unwilling to parole or discharge the child upon its own responsibility, it may petition the committing court for a transfer, or other proper disposition, on the ground that '' a child so committed is incorrigible and that his or her presence therein is seriously detrimental to the welfare of the institution or other children therein '' (Penal Law, § 486; see also Children's Court Division Rules of Practice, rule 10, subds. [b], [c], adopted June 18, 1941, pursuant to N. Y. City Dom. Rel. Ct. Act, § 12, revised August 6, 1946; Bender's Court Rules [1st ed.], pp. 363-364).

*C.* " If any person who shall have been remanded or committed under this act to the care and custody of any duly authorized association, society or institution shall abscond, escape or otherwise absent himself from such association or institution unlawfully or without the approval of the superintendent or person in charge, or violate the conditions of parole when paroled therefrom irrespective of the age of such person, a justice of this court or a judge of any children's court within the state, upon satisfactory proof by a duly authorized representative of such institution of such escape, absconding, unlawful or unapproved absence, or violation of parole, may issue a warrant against such person requiring such representative or any peace officer to take such person into custody and bring him before the court and the court may parole, or may remand him to any place of detention authorized by law to accept the custody of children or, if over sixteen, in any other suitable place of detention, until such person may with all speed be returned to such association, agency, society or institution." (N. Y. City Dom. Rel. Ct. Act, § 83, subd. [h], added by L. 1944, ch. 738, eff. April 11, 1944.)

*D.* By way of construction of and corollary to the last sentence of above-quoted subdivision 1 of section 86 of the New York City Domestic Relations Court Act, subdivision (c) of rule 10 of the Rules of Practice of the Children's Court Division provides: " Where a child is committed to an institution and is rejected by such institution within sixty (60) days, the Court may deem that there has been no acceptance of such commitment and may vacate the same, and make such other disposition as might have been made in the first instance if said commitment had never been made."

In " Joseph Levine's " alleged behalf there has been invoked this court's power to intervene provided for in subdivision 1 of section 86 of the New York City Domestic Relations Court Act (quoted, *supra,* and described as reserved control *A*). On October 9, 1946, pursuant to that statutory provision the mother filed a formal petition which concludes with the prayer " that this Court inquire into the circumstances of the detention of the said child, and into petitioner's fitness to assume the custody of the said child, vacate the order of commitment herein and place the said child in the care and custody of petitioner and for such other and further relief as the Court may deem just and proper ".

The duly filed formal answer of Jewish Child Care Association of New York, Inc., also provided for in the statute, alleges:

" The application of petitioner for release of the said child has been denied, * * * for the following reasons: To the best of our knowledge, there has been no substantial change in the family's situation or the mother's attitude which would lead to a better prognosis if the child were to return home. It is our firm belief that this boy is of substantially normal intelligence and that both his retardation and behavior difficulties are the direct result of the excessive pressure and demands of * * * his mother. We also feel that the very slight and negligible progress he has made both in the Pleasantville Cottage School and Edenwald School is in large measure the result of the mother's continued pressure and demands. Her present request for the child is based on her objection to our request that visiting be limited at this time to once in three or four months, which plan is based on our psychiatrist's recommendation.''

The soundness of that position was amply sustained by the evidence developed upon the hearing of the issues, including the demeanor of the petitioner and talks with the child in chambers. It is therefore very regrettable that despite the intelligent co-operativeness of petitioner's counsel she could not be persuaded by him or the court to accept a six months' trial of the Edenwald School for Boys' program of limitations on visits as an indispensable feature of the child's continued treatment at Edenwald School. The mother's rigid, uninformed and aggressively hostile attitude and the upsetting effect, upon the child, of the release application combine to constrain the reluctant conclusion that Jewish Child Care Association of New York, Inc., ought to be relieved at this time of further responsibility for this essentially neglected child and that he be allowed to remain at home under this court's supervision, although the outlook is distressingly doubtful.

No useful purpose would be served by reciting the details of the case record data available already at the time of the commitment or of the evidence at the recent release application hearing or of subsequent developments (such as the child's having twice run away to his home). Suffice it to state that there is justification for the intimation of the Jewish Child Care Association of New York, Inc., that it now contemplates filing a superseding cross petition for transfer (above-described reserved control *B*), in order to be freed of a responsibility which it was originally disinclined to assume and which, after initial progress while the parents co-operated, it regards as a hopeless undertaking at the present stage.

Under all the circumstances the practical course now is simply to grant the pending release application and restore the court's direct jurisdiction by placing the child on probation (pursuant to N. Y. City Dom. Rel. Ct. Act, § 86, subd. 1; § 83, subd. [h], second paragraph), one of the conditions of which, hereby imposed, is an examination of the child and its parents by Dr. Helen Montague, Director of the Court's Bureau of Clinical Services, 135 East 22d Street, New York City, at a date to be arranged, and thereafter treatment in that clinic if Dr. Montague so advise.

Such disposition is made with deep misgivings, in default of any other alternative; it can only be wishfully hoped that this grievously deprived child will not soon resume in his home, the school and the community the same maladjustment as before his removal to a controlled environment upwards of three years ago.

Perhaps, when and if the mother fail in the plans for the child which she asks opportunity to try out, she may again request, and be willing to accept unconditionally, the help of Jewish Child Care Association of New York, Inc.

Meanwhile, that agency cannot fairly be expected to continue its long efforts to rehabilitate " Joseph " under the handicap of the parents' hostile interference and perhaps inadequate social service personnel for the many difficult problems at Eden-wald School for Boys.

For the foregoing reasons it is ordered that the petition be granted and that the child (who is now being harbored in his home after absconding from Edenwald School) be deemed delivered to the parents, subject to probation-supervision by the court according to the rules and practice of this court and the above-stated directions for examination and clinic treatment.

Notice shall be given to the parties pursuant to the subjoined direction.