In the Matter of Holman Bowman, Complainant, against Lorenzo Cruz, Defendant.

Domestic Relations Court of the City of New York, Children's Court, New York County, February 26, 1947.

*Louis L. Stutman* of the Legal Bureau of the Police Department of the City of New York, for complainant.

*Bernard Moldow* of Legal Aid Society, for defendant.

SICHER, J. Question arises as to the jurisdiction of the Children's Court Division of this statutory *civil* court as a forum for the adult *criminal* prosecution phase of the Police Department of the City of New York's commendably vigorous combat against the armed warfare now rampant among organized street clubs of children who have learned the art of modifying toy pistols into dangerous weapons capable of firing .22 caliber cartridges or have acquired, sometimes from veterans, American or foreign-made regulation revolvers.

As one of its many measures to curb juvenile delinquency the Police Department of the City of New York has recently inaugurated a program of prosecution of parents and other adults predicated upon section 494 of the Penal Law (entitled " Punishment of parents, guardians or other persons for contributing to the delinquency and offenses of children "). Such program has been publicized as a novel device, although that statute was enacted in 1910 and similar drives have been tried elsewhere, with doubtful results, notably in Toledo, Ohio. (See " Punishing Parents ", Paul W. Alexander, Judge, Lucas County, Juvenile Court, Toledo, Ohio, in " Probation, June 1944 ", published by National Probation Association.) And the current New York City program has been implemented with newspaper releases appropriate to the conventional theory of the deterrent effect of criminal prosecutions but inconsistent with the indispensable privacy of Children's Court hearings (N. Y. City. Dom. Rel. Ct. Act, § 77; L. 1933, ch. 482; Children's Court Act, § 45; L. 1922, ch. 547), and records (N. Y. City Dom. Rel. Ct. Act, § 52; Children's Court Act, § 45), and the informal understanding with the press and the Police Department to keep out of newspapers the name, address, picture, school, or other identifying particulars, of any child concerned in a delinquency or neglect proceeding, either as the individual directly involved or as witness. Such shielding from publicity is nationally recognized to be an essential feature of Children's Courts, as specialized tribunals geared for authoritative, yet sympathetic, guidance and treatment and animated by the social philosophy that in their operation " The concept of crime and punishment disappears. * * * All suggestion and taint of criminality was intended to be and has been done away with." (*People* v. *Lewis*, 260 N. Y. 171, 176.) The words just quoted are from a notable decision of the New York Court of Appeals establishing the procedure for Children's Courts in this State.

Section 494 of the Penal Law provides, in part: " 1. A parent, guardian or other person having custody of a child actually or apparently under sixteen years of age, who omits to exercise reasonable diligence in the control of such child to prevent such child from becoming guilty of juvenile delinquency as defined by statute * * * or any other person * * * who knowingly or wilfully does any act or acts to produce, promote or contribute to the conditions which cause such child to be adjudged guilty of juvenile delinquency * * * shall be guilty of a misdemeanor."

That section is only one of several comprising an entire article of the Penal Law (art. 44), captioned "Children", so that necessarily children are taken daily to the criminal courts as witnesses in cases under that article 44 and also other Penal Law articles, for example, in first and second degree rape prosecutions under article 180.

Relevant to the particular facts herein is also section 1896 of the Penal Law: "A person who * * * sells * * * to any child under the age of sixteen years * * * any loaded or blank cartridges * * * is guilty of a misdemeanor."

The Police Department's decision to activate section 494 of the Penal Law includes selection of the Children's Court Division of this court as the preferred forum. Doubtless one reason was to achieve summary disposition by a single judge and the resultant avoidance of double production of witnesses and the need to convince four judges incident to the ordinary prosecution of a misdemeanor charge in the City of New York, for which the prescribed procedure is a prima-facie-case preliminary hearing in the City Magistrate's Court and then another hearing in the Court of Special Sessions before three judges, in the absence of the accused's express consent to trial before a single magistrate sitting as a Court of Special Sessions. (See N. Y. City Crim. Cts. Act, §§ 31, 130, subd. j; § 131; L. 1910, ch. 659; *People* v. *Geltman,* 267 App. Div. 83; *People* v. *Citarelli,* 247 App. Div. 53.)

Unquestionably, the choice of forum is a matter within the sound discretion of the law enforcement authorities (*People* v. *Rogers,* 248 App. Div. 141, affd. 272 N. Y. 612). So, if this statutory court has been clothed with the requisite jurisdiction and adequate machinery, no individual justice may refuse to entertain a tendered prosecution because of personal conviction that the Children's Court Division is unequipped for efficient action in an area involving the wholly different concepts and safeguards of the criminal law or that the Police Department's planned resort to the Children's Court Division for prosecution of section 494 of the Penal Law violations is a retrogressive step in the steady development of the Children's Court Division away from criminal law origins and would disrupt its primary function of *rehabilitation* of the *particular* child and family by treatment, not punishment, in co-operation with public and private social agencies. But today's decision is grounded on a legal conclusion of lack of jurisdiction in the situation presented.

"The Children's Court and the Domestic Relations Court of

the City of New York, of which it is a part (L. 1933, ch. 482), are courts of inferior and limited jurisdiction. Such ' jurisdiction will never be presumed and the facts necessary to confer jurisdiction in any particular case must affirmatively appear in the record ' (*People* v. *Smith*, 266 App. Div. 57, 60). * * * The Children's Court branch of the Domestic Relations Court has no jurisdiction to enforce statutes penal in their nature, except as collateral to its primary jurisdiction. (See in this respect, *People* v. *Rogers*, 248 App. Div. 141, affd. 272 N. Y. 612; *Matter of Kane* v. *Necci*, 269 N. Y. 13.) " (*Matter of Gardner* v. *Dom. Rel. Ct. of City of N. Y.*, 184 Misc. 44, 46, 47, SWEZEY, J.)

The sole asserted jurisdictional basis for the instant proceeding is the last sentence of subdivision 2 of section 61 of the New York City Domestic Relations Court Act, the whole of which subdivision reads: " 2. *Adults; offenses against children.* The children's court shall have jurisdiction, *whenever the issues involving a delinquent or neglected child are before the court summarily* to try, hear and determine any charge or offense, less than the grade of a felony, against any parent, or other person in loco parentis to such child, involving an act or omission in respect to such child in violation of any law of the state or ordinance of the city of New York, or which has or is alleged to have contributed to the delinquency, neglect or dependency of any such child; and the court is authorized and empowered to render judgment therein, and if judgment be rendered sustaining the charge against such parent or other person the court shall have power to *fix such punishment as the law provides,* or may, in the discretion of the court, suspend sentence or place on probation, and *by order impose upon him such duty as shall be deemed to be for the best interests of such child.*" (L. 1933, ch. 482, eff. Oct. 1, 1933.) " Such court shall also have jurisdiction, *whenever the issues involving a delinquent child are before the court, summarily* to try, hear and determine any charge or offense less than the grade of a felony against any person alleged to have contributed to such child's delinquency and *may impose the punishment provided by law for such offense.*" (L. 1936, ch. 346, eff. April 9, 1936.) (Emphasis supplied.)

It is contended that the just-quoted subdivision 2 of section 61 of the New York City Domestic Relations Court Act confers on each justice sitting separately in the Children's Court Division of this court the power to try and determine summarily

a violation of section 494 of the Penal Law and upon conviction to impose the "Punishment of misdemeanors when not fixed by statute" (Penal Law, § 1937), namely, "imprisonment in a penitentiary, or county jail, for not more than one year, or by a fine of not more than five hundred dollars, or by both."

Such contention postulates that in two respects a violation of section 494 of the Penal Law stands alone among all misdemeanors committed within the city of New York: (1) If the police elect to arraign the accused in the Children's Court Division of this court, he must there submit to a summary hearing before a single justice *in camera*, while all other misdemeanors are triable at a public hearing before a bench of three Court of Special Sessions justices; and (2) the Children's Court Division sentence may be incarceration for one year plus a fine of $500, as compared with the usual maximum of six months' imprisonment for offenses within the summary jurisdiction of a magistrate, which comprise " * * * a third class of offenses which are neither felonies prosecuted by indictment and triable by a common-law jury (Art. 1, § 2), nor misdemeanors triable by Courts of Special Sessions with or without the statutory jury of six (Art. 6, § 18), but *petty offenses* triable summarily by a magistrate without a jury. Within this category are cases of persons charged with intoxication, vagrancy, with being disorderly persons, etc.; also many cases of violation of municipal ordinances. (Village Law, § 180; Second Class Cities Law, § 183.) *These minor offenses, below the grade of misdemeanors, have always constituted in our law a class by themselves.*" (*Matter of Cooley* v. *Wilder*, 234 App. Div. 256, 259; emphasis supplied; cited with approval in *People* v. *Grogan*, 260 N. Y. 138, 141; see, also, *People ex rel. Burke* v. *Fox*, 205 N. Y. 490, 494–496.) Relevant, therefore, is the caveat: " * * * in cases of doubtful construction or of conflicting statutory provisions, that interpretation should be given which best protects the rights of a person charged with an offense, to a trial according to the common law " (*People ex rel. Cosgriff* v. *Craig*, 195 N. Y. 190, 197) or, in the time-honored words of Chief Justice Holt: " * * * where a penalty is inflicted, and a different manner of trial from Magna Carta instituted; and the party offending, instead of being openly tried by his neighbors in a court of justice, shall be convicted by a single justice * * * in a private chamber, upon testimony of one witness, I fain would know, if on the consideration of such a law, we ought not to adhere to the letter * * *." (*Regina*

v. *Whistler,* Holt K. B. 215, quoted in *People* v. *Phillips,* 1 Parker Crim. Rep. 95, 101.)

For all the reasons set forth in this opinion, subdivision 2 of section 61 of the Domestic Relations Court Act seems to me ineffectual so to segregate alleged violators of section 494 of the Penal Law.

The first, and sufficient, reason is the June 23, 1936, pronouncement of the Appellate Division, First Department, in *People* v. *Rogers* (248 App. Div. 141, *supra*) as unanimously affirmed by the Court of Appeals on November 17, 1936 (272 N. Y. 612), that the Children's Court Division of this court has been vested with no power or procedural machinery to try a misdemeanor charge.

*People* v. *Rogers* (*supra*) presented the converse situation of election by a law enforcement agency to prosecute in the Court of Special Sessions a violation of section 482 of the Penal Law (" Unlawfully omitting to provide for a child ") instead of proceeding against him in the Children's Court under subdivision 4 of section 61 of the Domestic Relations Court Act, which reads: " The children's court shall, except as herein otherwise provided, have exclusive original jurisdiction in all cases against persons charged with a failure to obey any order of the court made pursuant to the provisions of this section, and *any violation of an order made pursuant to the provisions of this section shall be punishable as a misdemeanor,* but the court may, in its discretion, proceed with and adjudicate upon it as a contempt of court." (Emphasis supplied.)

Apposite are the reasoning and the following language of the luminous opinion of Mr. Justice ALBERT COHN (writing for a unanimous court): " In creating the Domestic Relations Court, the Legislature transferred to the new court the jurisdiction theretofore exercised by the Children's Court and ' that part of the Magistrates' Court system of the City of New York known as the Family Court.' (Domestic Relations Court Act, § 3.) The newly created Domestic Relations Court comprises two divisions, (1) the Children's Court, and (2) the Family Court (§ 5), and it is provided that the justices of the court are magistrates (§ 6). It is to be noted that the provisions of the New York City Children's Court Act (Laws of 1924, chap. 254) with regard to jurisdiction, powers and procedure of the Children's Court are found substantially re-enacted in title II of the Domestic Relations Court Act.

" Save in so far as the Children's Court had jurisdiction over misdemeanors committed by children and which were treated as juvenile delinquencies, neither of the former courts, namely. the Children's Court or that part of the Magistrates' Court system known as the Family Court, had or, exercised jurisdiction over a misdemeanor as a ' criminal action.' *Nothing in the statute indicates an intention to confer upon the new court anything other than civil jurisdiction.* * * * *Power was conferred upon the new court to treat as civil offenses acts which, but for the law creating the court, would be punishable only as crimes. Such acts do not cease to be crimes, but the new court is authorized to treat them as civil wrongs and impose punishment for them as such.* The jurisdiction conferred is exclusive so far as the civil wrong is concerned. * * * The Penal Law, the Code of Criminal Procedure and the Inferior Criminal Courts Act regulate the manner of prosecuting and convicting criminals. *A consideration of the provisions of these laws in connection with the Domestic Relations Court Act leads to the conclusion that there was no intention to transfer to the Domestic Relations Court the power to try misdemeanors.* Such exclusive jurisdiction is lodged within the city of New York in the first instance in the Court of Special Sessions. (Inferior Criminal Courts Act, § 31, subd. 1.) *A crime is prosecuted on an indictment or information. No provision is made in the Domestic Relations Court Act for either. A misdemeanant is entitled to a trial by three justices of the Court of Special Sessions of the City of New York* (Inferior Criminal Courts Act, § 34) unless there is a waiver. (Inferior Criminal Courts Act, §§ 43 and 44.) *The Domestic Relations Court Act provides for no such safeguard. As pointed out in Matter of Kane* v. *Necci* (*supra*), *the right to appeal from a conviction of a crime is radically different from the right to appeal from a judgment or order of the Domestic Relations Court.* (Domestic Relations Court Act, § 58.) " (*People* v. *Rogers,* 248 App. Div. 141, 143–146, *supra;* emphasis supplied.)

Although Mr. Justice COHN's opinion does not expressly mention subdivision 2 of section 61 of the Domestic Relations Court Act, that subdivision was copiously discussed in each brief filed with the Appellate Division and also the Court of Appeals; and the decision is a square determination that the words (Dom. Rel. Ct. Act, § 61, subd. 4), " any violation of an order made pursuant to the provisions of this section shall be punishable **as a** misdemeanor ", **are inoperative and void**

if intended to confer upon the Children's Court Division of this court power to try, determine, and punish for, a misdemeanor. And the *ratio decidendi,* applicable equally to subdivision 2 of section 61 of the Domestic Relations Court Act is that appropriate provisions to sustain any form of criminal prosecution are absent from title II of the Domestic Relations Court Act of the City of New York (relating to the jurisdiction of the Children's Court Division).

True, section 18 of article VI of the State Constitution manifests an "intention of the framers of the Constitution that the Legislature could authorize the punishment of adults as an incident to a proceeding primarily instituted for the correction, protection and guardianship of a delinquent minor." (*People v. Smith,* 266 App. Div. 57, 60.) But subdivision 2 of section 61 of the Domestic Relations Court Act is abortive; in its enactment the Legislature failed to exercise the constitutional grant effectually.

Subdivision 2 of section 61 of the Domestic Relations Court Act appeared in its present form in the original statute (L. 1933, ch. 482), which had other inadequacies, since corrected by the Legislature. However, there has been no amendment whatever of subdivision 2 of section 61 of the Domestic Relations Court Act since April 9, 1936. The gaps revealed by the June 23, 1936, *People v. Rogers* (*supra*) decision still exist, notwithstanding that other sections of the Domestic Relations Court Act supply the pattern for adequate authorization through appropriate incorporation, by reference, of provisions of other statutes. For example: "In the exercise of its jurisdiction the [Family] court [Division] shall have power * * * (20) *To hold court as a magistrate* to hear and determine charges of disorderly conduct by either the petitioner or the respondent affecting the other, or the child of either, where the family is already before the court in a non-support proceeding" (Dom. Rel. Ct. Act, § 92, subd. [20]; emphasis supplied); also, power "To commit for purposes of observation, *in the manner provided by law for a magistrate,* a person before the court who the court has reason to believe may be insane" (Dom. Rel. Ct. Act, § 92, subd. [19]; emphasis supplied). For further example: "Probation officers are peace officers and shall be subject to the provisions of title nine of the code of criminal procedure" (Dom. Rel. Ct. Act, § 25); "All of the provisions of the judiciary law relating to civil and criminal contempts shall apply to this court except * * *" (Dom.

Rel. Ct. Act, § 57); "An appeal may be taken to the appellate division of the supreme court of the appropriate judicial department by any party to the proceeding from any final order or judgment of the court, within thirty days after the entry of said order or judgment, and the provisions of article thirty-seven and article thirty-nine of the civil practice act shall relate to appeals hereunder in so far as such provisions may be practically applied thereto " (Dom. Rel. Ct. Act, § 58); "The provisions of section three hundred forty-four-a and section three hundred ninety-one of the civil practice act shall apply to proceedings under this act in so far as such provisions may be applied thereto " (Dom. Rel. Ct. Act, § 60); "In the exercise of its jurisdiction the court shall have power to order, either before, during or after a hearing a mental, physical or psychiatric examination of or *to commit for purposes of observation, in the manner provided by law for a magistrate,* a parent, guardian, custodian or other person having or seeking custody of a child " (Dom. Rel. Ct. Act, § 61, subd. 7; italicized matter added by L. 1941, ch. 943); and under title III (relating to the jurisdiction and powers of the Family Court), section 91 provides: "The *family court* shall have * * * (2) * * * (b) The jurisdiction and powers conferred by law upon magistrates, police justices and justices of a court of special sessions, so far as may be necessary to carry out the provisions of this act " (emphasis supplied).

Thus, the Legislature could have similarly included in subdivision 2 of section 61 some such language as: "In any proceeding under this subdivision the court shall have all the powers of a magistrate sitting as a court of special sessions for the trial of a misdemeanor, and the provisions of the Penal Law, Code of Criminal Procedure, and the New York City Criminal Courts Act, including Title XI of the Code of Criminal Procedure relating to appeals, shall govern such proceeding in so far as such provisions may be practically applied thereto." But in the absence of that kind of express language, subdivision 2 of section 61 of the Domestic Relations Court Act is too vague and uncertain to sustain the election by the Police Department to deprive an alleged violator of section 494 of the Penal Law of the safeguards of a preliminary hearing before a magistrate and then a plenary trial by three Court of Special Sessions justices in accordance with the technical requirements of the criminal law.

Moreover, because the Domestic Relations Court of the City of New York has been adjudicated by the Court of Appeals to be a civil court (*Matter of Kane v. Necci*, 269 N. Y. 13), its hearings are governed by the civil trials principle that the allegations of a Children's Court or Family Court petition must be proved only by a " fair preponderance of the evidence ". Subdivision 2 of section 61 of the Domestic Relations Court Act is silent as to the right of an adult respondent to application of the " beyond a reasonable doubt " stricter standard of the criminal law. Nor, as pointed out in *People* v. *Rogers* (248 App. Div. 141, *supra*) is there anywhere in the Domestic Relations Court Act provision for the different and ampler right of appeal from a criminal conviction accorded by the Code of Criminal Procedure.

Furthermore, it is doubtful that subdivision 2 of section 61 of the Domestic Relations Court Act validly effects by implication a *pro tanto* repeal of section 31 of the New York City Criminal Courts Act (L. 1910, ch. 659, as amd.) which provides that the Court of Special Sessions " shall have in the first instance exclusive jurisdiction to hear and determine *all* charges of misdemeanor committed within the city of New York, except charges of libel. * * *." (Emphasis supplied.)

*Zambrotto* v. *Jannette* (160 Misc. 558), *People* v. *Denny* (50 N. Y. S. 2d 435) and *In re Rosen* (54 N. Y. S. 2d 632) have not been overlooked. I concur in the premise of my esteemed colleague, Mr. Justice PANKEN, that the Legislature has the constitutional power to confer on the Children's Court Division criminal, as well as civil, jurisdiction (*Zambrotto* v. *Jannette, supra*, p. 560; *In re Rosen, supra*, p. 634). But I must dissent from his corollary that in a proceeding under subdivision 2 of section 61 of the Domestic Relations Court Act, the justice of this court sits as a magistrate (*People* v. *Denny, supra*, p. 437). For, even assuming, *arguendo*, that the sentence in section 6 of the Domestic Relations Court Act, " The justices of the court are magistrates ", means " city magistrates " and not merely " magistrates " as defined in sections 146 and 147 of the Code of Criminal Procedure, a magistrate sitting in the city of New York has no jurisdiction *in that capacity* to try and determine a misdemeanor, in the absence of an express waiver and consent of the accused (*People* v. *Fuchs,* 166 App. Div. 811).

Neither am I unmindful that the intention is not lightly imputed to the Legislature of solemnly enacting a statute which

is ineffective (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 144) nor of the gravity of the street gang disorders now confronting the Police Department, nor that my interpretation of subdivision 2 of section 61 of the Domestic Relations Court Act is not shared by all justices of this court. However, after much reflection and research I have concluded that diverting criminal prosecutions from the Children's Court Division to the criminal courts is not only the sound and constructive practical course but also that it is bedrocked upon the basic principle of statutory construction that any omission is to be remedied by the Legislature, not the courts (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 363): "The case is controlled by the familiar rule of statutory construction that, if the Legislature fails to insert such provisions in the law as will accomplish the result intended, their omission cannot be remedied by construction, and the law must to that extent be considered defective and inoperative, the court having no power to interpolate words or phrases." (*Kennahan* v. *City of New York,* 162 App. Div. 364, 365–366, citing *Furey* v. *Town of Gravesend,* 104 N. Y. 405, 410.) "While the courts may interpret doubtful or obscure phrases and imperfect language in a statute so as to give effect to the presumed intention of the legislature, and to carry out what appears to be the general policy of the law, they cannot, by construction, cure a *casus omissus,* however just and desirable it may be, to supply the omitted provision." (*McKuskie* v. *Hendrickson,* 128 N. Y. 555, 558; accord *Matter of Second Avenue M. E. Church,* 66 N. Y. 395.)

For administrative overzealousness, however, well motivated and otherwise praiseworthy, the fitting warning has been eloquently sounded by the late Chief Judge CARDOZO: " We are not unmindful of the public interests * * *. Commanding as those interests are, they do not supply us with a license * * * to twist what has been written in the statutes into something else that we should like to see. Historic liberties and privileges are not to bend from day to day ' because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment ' (HOLMES, J., in *Northern Securities Co.* v. *United States,* 193 U. S. 197, 400), are not to change their form and content in response to the ' hydraulic pressure ' (HOLMES, J., *supra*) exerted by great causes. A community whose judges would be willing to give it whatever law might gratify the impulse

of the moment would find in the end that it had paid too high a price for relieving itself of the bother of awaiting a session of the Legislature and the enactment of a statute in accordance with established forms." (*Matter of Doyle*, 257 N. Y. 244, 268.)

Fortunately, for the specific evil here presented the criminal courts furnish ample remedy, free from any question of jurisdiction or of proper implementation for the trial and handling of Penal Law violators. That will appear from the following statement of germane facts: On January 7, 1947, " Charles Hanna " (name disguised), fifteen and one-half years of age, was duly adjudicated a " delinquent child " (Dom. Rel. Ct. Act, § 2, subd. [15]) by the New York County Children's Court Division, upon a petition alleging that on December 10, 1946, at a specified time and place, he had wounded another boy with a shot from a .22 caliber pistol. Thereupon, in the light of a Probation Bureau investigation showing that " Charles Hanna " was deeply involved in street gang activities, lacked home ties and background suitable for rehabilitation under probation officer supervision, and was patently below the selective intake requirements of all private agencies, he was duly committed to the New York State Training School for Boys on January 21, 1947. Such commitment automatically terminated this court's jurisdiction over " Charles Hanna " (see *Matter of " Levine ",* 187 Misc. 1054). Consequently, at that point in time there ceased to be as to him any " issues involving a delinquent child * * * before the court " (Dom. Rel. Ct. Act, § 61, subd. 2, last sentence).

On the next day, January 22, 1947, a police officer filed in the New York County Children's Court Division a complaint against one Lorenzo Cruz, an adult, alleging that he had violated section 494 of the Penal Law and " by such acts * * * did thereby contribute to the delinquency of the said child " (" Charles Hanna ") " as follows: That on December 7th 1946 [he] did sell to the above mentioned child — 14 rounds of .22 cartridges for which he demanded and received the sum of 28 cents in U. S. currency; further that on December 23rd 1946 he did sell to one ' Vincent Arnold ' [name disguised], fourteen, * * * 5 rounds of .22 caliber ammunition for which he demanded and received the sum of 25 cents ".

On January 22, 1947, defendant, after being fully advised of his constitutional rights to counsel and an adjournment,

elected to proceed, denied the allegations of the complaint, and was remanded under bail for trial on January 24, 1947.

During that initial hearing and again on January 24, 1947, February 6, 1947, February 14, 1947, and February 17, 1947, there was present the competent and co-operative attorney for the Legal Bureau of the Police Department of the City of New York (New York City Charter, § 437). Defendant, also, was ably represented by the Legal Aid Society at the February 6, February 14, and February 17, 1947, hearings but did not have counsel at the January 22d and January 24th hearings.

The testimony of the two boys and two police officers on January 24, 1947, fully established the allegations of the complaint; and defendant expressly elected not to take the stand. Accordingly, under a then misapprehension of the law I adjudged him " guilty of the offense charged ", and remanded him, under bail, for Probation Bureau investigation and sentence. For, the undisputed sale of the cartridges with which the duly adjudicated delinquent child " Charles Hanna " had shot and injured another boy was a violation of section 1896 of the Penal Law, quoted at page 829, *supra,* and such unlawful act did clearly " contribute to the conditions which cause such child to be adjudged guilty of juvenile delinquency " (Penal Law, § 494). That is, this particular adult prosecution was radically different from one against an inadequate parent and involves no nice questions as to the point where a parent's nonfeasance or misconduct, sufficient to warrant this court's exercising its " neglected child " jurisdiction (Dom. Rel. Ct. Act, § 2, subd. [17]), becomes a crime, in the light of the established law that no legal obligation even to respond in money damages for a child's tort arises out of the mere relationship of parent and child (*McCarthy* v. *Heiselman,* 140 App. Div. 240; *Steinberg* v. *Cauchois,* 249 App. Div. 518; *Frellesen* v. *Colburn,* 156 Misc. 254, 256; 39 Am. Jur., Parent and Child, § 55, pp. 690–691), and the criminal law doctrine that " Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensive guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements. ' Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid.' (*United States* v. *Brewer,* 139 U. S. 278, 288; * * *.) " (*People* v. *Grogan,* 260 N. Y. 138, 145,

*supra.*) In the case at bar there is a direct causal relation between the delinquency and the adult act, which act itself violated an express provision of the Penal Law; and the conviction, becoming known in the neighborhood, would not unlikely deter other local suppliers of ammunition to organized street club members.

However, soon after the January 24, 1947, hearing, doubt developed in the course of the study ending in this opinion; the probation officer's investigation showed that the accused was unable to procure bail or attorney; that he still protested innocence; and that he had meanwhile been held also by a City Magistrate for trial by the Court of Special Sessions on a charge of violating section 1896 of the Penal Law arising out of the identical facts alleged in the complaint in this court. So, I requested the Legal Aid Society to appear for defendant; and, in the exercise of the inherent power of a court over its judgments (cf. *Matter of Lyons* v. *Goldstein,* 290 N. Y. 19), on February 6, 1947, granted defendant's attorney's motion to open the proceeding for cross-examination of the accusing witnesses and defendant's testifying in his own behalf. However, because of my frankly indicated doubt as to the jurisdiction of this court, it was stipulated that further steps in this court should be deferred pending developments in the Court of Special Sessions, bail being meanwhile reduced to the amount fixed by that court.

On February 17, 1947, defendant was convicted by the Court of Special Sessions and remanded for sentence, without bail, to February 27, 1947.

Accordingly, there was then noted upon the record in the proceeding herein: (a) *Ex mero motu* the court struck out the evidence concerning the alleged December 23, 1946, sale to " Vincent Arnold ", for the reason that he had never been adjudicated a delinquent child, nor were there any issues involving alleged delinquency by him before this court (see *People* v. *Smith,* 266 App. Div. 57, *supra*; *People* v. *Dritz,* 259 App. Div. 210). But there was let stand so much of his testimony as corroborated " Charles Hanna's " testimony concerning the December 7, 1946, sale of ammunition to the latter; (b) the aforesaid January 24, 1947, finding that defendant was guilty of the offense charged was vacated, not by way of acquittal on the facts, but on the ground of lack of jurisdiction as matter of law; (c) the defendant was accordingly discharged, subject, however, to the continued jurisdiction of

the Court of Special Sessions and disposition by it and (d) it was stated that there would be filed an explanatory opinion and a formal order of dismissal entered.

This court's lack of subject matter jurisdiction involves: (1) the general ground that subdivision 2 of section 61 of the Domestic Relations Court Act is inoperative and void, and (2) the special ground that since the complaint against the adult was filed after the child "Charles Hanna's" commitment, there were at that time no longer any "issues involving a delinquent child * * * before the court".

Defendant's conviction in the Court of Special Sessions will serve all community purposes, and justifies the observation at the threshold of the proceeding in this court that the prosecution of the defendant should have been solely laid in the Court of Special Sessions, with a preliminary Magistrate's Court hearing. Nevertheless, this opinion is being filed simultaneously with entry of a final order dismissing the complaint for lack of subject matter jurisdiction, so that an appeal may be taken to the Appellate Division under section 58 of the Domestic Relations Court Act. And because of Police Department releases to the press while this matter was *sub judice* in this court, this opinion details the facts and the law and will be available to the press in lieu of the informal interviews requested, and as a matter of judicial propriety refused.