In the Matter of "NINA PEREZ".*

Domestic Relations Court of the City of New York, Children's Court, Bronx County, April 7, 1953.

---

\* The opinion as filed sets forth the true name of the child but as here published substitutes a fictitious name (cf. N. Y. City Dom. Rel. Ct. Act, § 52, L. 1933, ch. 482).

Petitioner in person.

*Nathaniel L. Goldstein, Attorney-General (Louis E. Cooper* of counsel), for Department of Mental Hygiene of the State of New York appearing specially.

*Denis M. Hurley, Corporation Counsel (Rose Schneph* of counsel), *amicus curiæ.*

SICHER, J. There is squarely presented the question whether this court, which on March 5, 1952, adjudged " Nina Perez " mentally defective and certified her to Willowbrook State School for custody, treatment and observation pursuant to section 124 of the Mental Hygiene Law, has now jurisdiction to entertain her mother's application for the patient's discharge.

Study of the controlling legislation leaves no doubt that although there has been conferred upon this statutory court power to certify a mentally defective child for admission to a State school there is wholly lacking jurisdiction to order such patient's discharge.

On December 12, 1951, the mother of " Nina Perez ", a child born January 6, 1937, in Puerto Rico, filed a petition, under subdivision (15) of section 2 and articles 1, 2 and 3 of title II of the Domestic Relations Court Act of the City of New York, alleging that such daughter was incorrigible, ungovernable, habitually disobedient, and beyond the control of her parent. Thereupon, on December 19, 1951, " Nina " was adjudged a delinquent child and remanded to the Youth House-Girls Camp for temporary detention, social worker study and various tests there, a psychiatric examination in this court's bureau of mental health services, and the usual probation bureau investigation, in the light of the following indorsement on the petition at the conclusion of the hearing: " Allegations proved and freely admitted. The child seems without moral training and may be the victim of mother's ignorance and neglect. She admits acts of intercourse over a period of time with two named adults and also in Puerto Rico. She has not been enrolled in school."

Such study, tests, investigation, and physical, psychological, and psychiatric examinations on January 3, 1952, and again on February 18, 1952, showed that "Nina's" maladjustment stemmed largely from such mental defects as to preclude placement with normal children and to require, for the protection of herself and the community, confinement and treatment at one of the State schools for mental defectives designated in section 120 of the Mental Hygiene Law.

Accordingly, on March 5, 1952, a justice of this court made the afore-mentioned order of certification to Willowbrook State School, and shortly afterwards "Nina" was transported there. Then, in regular course, the Director of Willowbrook State School filed a certificate, as to her need for continued, indefinite term care and treatment as a patient, pursuant to the provisions of subdivision 7 of section 124 of the Mental Hygiene Law which read: "At any time prior to the expiration of sixty days from the date of admission as provided by this section, the director, or medical officer designated by him, of the institution to which the patient has been admitted for observation may, if he finds that such patient is in need of continued care and treatment, file in the office of the county clerk, a certificate setting forth his findings and the need for the continued care and treatment of such patient. *Upon the filing of such certificate, the order theretofore made by the judge shall become a final order and such patient shall thereafter remain in such institution,* or any other institution to which he may be transferred, *until his discharge in accordance with the provisions of this chapter.*" (Emphasis supplied.)

This court's March 5, 1952, order of certification was made not under any provision of the Domestic Relations Court Act of the City of New York but, instead, under the Mental Hygiene Law, in a new proceeding separate from and corollary to the prior delinquent child proceeding. And that order of certification was based on forms prescribed and furnished by the New York State Department of Mental Hygiene in conformance with subdivision 1 of section 124 of the Mental Hygiene Law, namely, a petition by the mother, a certificate of mental defect by a psychiatrist and a report of examination by a certified psychologist, all duly verified on February 18, 1952.

The power to entertain such mentally defective person proceeding under the Mental Hygiene Law and to certify the child "Nina" for admission to an institution for the mentally defective is expressly conferred, in subdivision 1 of section 124 of the Mental Hygiene Law, upon "a judge of a court of

record of the city or county, *or of a children's court,* or a justice of the supreme court of the judicial district in which the alleged mentally defective person resides or may be." (Emphasis supplied.) That is the primary source of the authority of this court to commit a mentally defective child rather than subdivision 1 of section 61 of the Domestic Relations Court Act of the City of New York, as mistakenly assumed in *Matter of Belloni* (188 Misc. 587). And, upon the making of that order of certification of "Nina Perez" as a mental defective and her commitment thereunder to Willowbrook State School the prior delinquent child proceeding was held in abeyance except for her continued remand therein at Youth House-Girls Camp until her transportation to Willowbrook State School and thereafter during an adjournment, for all purposes, to June 13, 1952, pending word whether "Nina" had been certified for indefinite term care pursuant to subdivision 7 of section 124 of the Mental Hygiene Law on which last-mentioned date the delinquent child proceeding was closed with the indorsement "Discharged to Willowbrook State School".

It is the customary practice of this court to keep open a prior delinquent or neglected child proceeding until after it will have been ascertained that the child who was originally the subject of such a proceeding and subsequently of a mentally defective child proceeding has become an indefinite term patient at a State school for mental defectives, so that in the event that the Director of the State school determine that a child who had been certified for sixty days' observation should not be longer detained, he or she may then be continued under the original jurisdiction of the Children's Court acquired in the prior delinquent or neglected child proceeding under the Domestic Relations Court Act. But jurisdiction under that statute ends, and such termination is finally recorded, when and if there will have been filed a continued care certificate under subdivision 7 of section 124 of the Mental Hygiene Law.

Moreover, once a patient will have been so certified under subdivision 7 of section 124 of the Mental Hygiene Law he or she may be discharged only in accordance with other provisions of the Mental Hygiene Law, namely:

Section 125 of the Mental Hygiene Law authorizes a review of proceedings by jury trial in the New York Supreme Court if petitioned, by or in behalf of the patient, within thirty days after the making of a final order of certification, and the discharge of such patient if the verdict of the jury be that he or she is not mentally defective.

Section 132 of the Mental Hygiene Law authorizes the director of the institution to grant a convalescent status to a patient in accordance with rules prescribed by the Commissioner of Mental Hygiene.

Section 133 of the Mental Hygiene Law authorizes a discharge of a patient at any time by and in the discretion of the director of the institution, and provides that " When the director is unwilling to certify to the discharge of a mentally defective patient upon request, and so certifies in writing, giving his reasons therefor, *any judge of a court of record in the judicial district in which the institution is situated,* upon such certificate and an opportunity of a hearing thereon being accorded the director, and upon such other proofs as may be produced before him, may direct, by order, the discharge of such patient, upon such security to the people of the state as he may require, for the good behavior and maintenance of the patient." (Emphasis supplied.) But the Domestic Relations Court of the City of New York is not a court of record (see Judiciary Law, § 2; " Denton " v. " Denton ", 179 Misc. 681; *Tell* v. *Tell,* 53 N. Y. S. 2d 94). Besides, Willowbrook State School, being situated in Richmond County, is in the Second Judicial District, and Bronx County Children's Court is in the First Judicial District.

Section 204 of the Mental Hygiene Law also provides that " any one in custody as a * * * mental defective * * * is entitled to a writ of habeas corpus, upon a proper application made by him or some relative or friend in his behalf " but that " All writs of habeas corpus hereunder must be made returnable before a justice of the supreme court or a county judge of the county in which the incompetent person is held. If at the time there is no such official in the county capable of acting, the writ shall be made returnable before the nearest accessible supreme court justice or county judge in an adjoining county."

Thus, as above stated, the provisions for the discharge of a patient who will have been certified as a mental defective under the Mental Hygiene Law are contained exclusively in that statute; and, it should be observed, no jurisdiction to entertain an application for release of such patient has been conferred on this court or any other Children's Court.

" Nina Perez's " mother was doubtless ignorant of those remedies provided in the Mental Hygiene Law but not elsewhere. So, when her request that " Nina " be allowed to come back home was denied by the Director of Willowbrook State School, quite understandably she turned to the Bronx County Children's Court as the forum where had been venued all prior steps con-

cerning her child and where all necessary papers are prepared by the court staff without charge, and where representation by attorney, although, of course, allowed, is not required nor, as in the Supreme Court, indispensable. The Justice sitting during that term at the Bronx County Children's Court was characteristically sympathetic toward the mother's limited financial and intellectual resources and mindful of her right to a determination of the then not yet considered question whether this court has the power to entertain applications for release of children whom it has certified to institutions for the mentally defective as well as applications for release of delinquent or neglected children committed by this court. Accordingly, that Justice authorized the preparation and filing of a petition for " Nina's " release under subdivision 1 of section 86 of the Domestic Relations Court Act of the City of New York, which provides that " Any parent * * * of any child who has been or shall hereafter be committed by the children's court to the custody of an institution * * * may at any time file with the court a petition verified by affidavit setting forth under what conditions such child is living, and that an application for the release of the child has been made to and denied by such institution * * *. A copy of such petition shall at once be served upon such institution * * * having the custody of the child, whose duty it shall be to file an answer to the same within five days. If upon examination of the petition and answer the court is of the opinion that a hearing should be had, it may, upon reasonable and due notice to all concerned, proceed to hear the facts and determine the question at issue, and may discharge, return such child to the custody of its parents or guardian or direct such institution * * * to make such other arrangements for the child's care and welfare as the facts of the case may require. If the court orders the discharge of a child from an institution, upon an application duly made, the court may place the child on probation or under the supervision of the court."

Upon the filing of that petition for release the Justice who authorized its acceptance directed the giving of due notice to the institution and the mother and scheduled a hearing, which in ordinary course was held on February 14, 1953, by me as the Justice then sitting in Bronx County Children's Court. At that time I noted the special appearance of the Attorney-General's office to contest the jurisdiction and indorsed on the petition: " Mother. Interpreter. There appears to be no jurisdiction to entertain this petition. The remedy would have to be in the Supreme Court or other Court of record in the Second Judicial

District under Mental Hygiene Law, § 124. Decision reserved. Memorandum will be filed." Also, an effort was then made to explain to the mother the legal situation and to offer her referral to a family agency for case work guidance because of the seeming selfishness and unsoundness of her motivation in asking for " Nina's " discharge and the clear indication of the child's great need for continued institutional care.

Study of a letter brief of the Attorney-General's office and personal research confirm my first impression that the instant petition should be, and it hereby is, dismissed for want of subject-matter jurisdiction.

This court's jurisdiction over a child whom it has adjudicated delinquent or neglected automatically terminates on the commitment of such child, under subdivision (c) of section 83 of the Domestic Relations Court Act of the City of New York, to an institution or agency, except for specific reserved power, namely, (1) where the parent applies for release of the child upon the institution's or agency's refusal to release the child under its care (N. Y. City Dom. Rel. Ct. Act, § 86, subd. 1); (2) where the institution or agency petitions for transfer; (3) where the court issues a warrant for a committed child who absconded from an institution or agency or violated his parole or (4) where the court vacates a commitment under subdivision (c) of rule 10 of the Rules of Practice of its Children's Court Division upon the unwillingness of the institution or agency within sixty days after commitment to continue responsibility for the child. (See *Matter of " Levine "*, 187 Misc. 1054.) So, the above-quoted provisions of subdivision 1 of section 86 of the Domestic Relations Court Act of the City of New York are designed to empower this court to determine a release controversy between the parent of a delinquent or neglected child and the institution or agency to which such child will have been committed under subdivision (c) of section 83 of the Domestic Relations Court Act of the City of New York. However, they have no relevance whatever to a mentally defective child certified under Mental Hygiene Law.

In conclusion and by way of dictum anent a colleague's query whether the Mental Hygiene Law ought not to be amended to empower this court to order the discharge of a mentally defective child: — There appears nothing incongruous or unreasonable in the existing legislative policy which clothes a local Children's Court with power to certify an allegedly or adjudicated delinquent or neglected child under its jurisdiction as a mental defective for admission to a State school but which restricts the remedies for the patient's discharge to the Supreme Court or

other court of record in the judicial district where the institution is located. For, not only has the Supreme Court or other court of record exclusive jurisdiction to handle such a proceeding as a habeas corpus writ but there should also be taken into account the inconvenience of the attendance of the director and other medical witnesses at a remote court. Except Willowbrook State School, all the institutions for mental defectives designated in section 120 of the Mental Hygiene Law are in the Third or Fourth Judicial District; and the five counties of the city of New York covered by the Domestic Relations Court are within the First or Second Judicial District.

Moreover, while the power to certify a child for sixty days' provisional placement in a State school for mental defectives is a useful adjunct to the Children's Court jurisdiction over delinquent and neglected children, disposition of the question whether a patient's mental condition has improved to a degree justifying his or her return to the community, often after the sixteenth birthday anniversary, is not an essential function of a Children's Court as presently underimplemented.

Analogous considerations of legislative policy underly the Attorney-General's May 7, 1945, ruling that subdivision 1 of section 86 of the Domestic Relations Court Act also does not operate to vest this court with jurisdiction to order the release of a child which it has committed to the New York State Training School for Boys or to the New York State Training School for Girls but that the Legislature has placed that power instead in the New York State Department of Social Welfare.

" Section 430 of the Social Welfare Law provides in part:
* * *

" ' 6. Any child may be paroled or discharged at any time after commitment *in accordance with rules of the board.*

" ' 7. Every child legally committed to any such school shall continue to be a ward of such school until he or she becomes of the age of twenty-one years, notwithstanding his or her parole or discharge therefrom, and *notwithstanding the provisions of any other act, whether general or special.* (Emphasis supplied)

" The provisions of § 86 of the Domestic Relations Court Act are appropriate to review the character of the care being given to a child in any of the many private institutions to which the court has power to commit a child. I find no indication that the Legislature intended to permit a local court to make a similar inquiry into the manner of conducting a State institution, or to direct the State Training School ' to make such other arrangements for the child's care and welfare as the facts of the case

may require.' The Legislature has provided adequate safeguards to assure the proper conduct and supervision of the State Training School (see Social Welfare Law §§ 412, 413, 416, 429)." (1945 Atty.-Gen., 263–264.)

Notice of today's decision shall be given pursuant to the subjoined direction.